**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

AMERICAN ASSOCIATION OF
COMMUNITY COLLEGES,
1 Dupont Cir. NW #700
Washington, DC 20036,

               Plaintiff,

            v.

RANZENO BARNES,
15404 Jodphur Dr.
Bowie, MD 20721,

               Defendant.

_____

:

:

:

:

:

:

Civil Action No. _____

**DEMAND FOR JURY TRIAL**

## <u>VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

### NATURE OF THE CASE

This suit seeks to prohibit further tortious and vindictive conduct by an angry former information technology ("IT") employee who, following his termination, illegally accessed his employer's computer system, sent falsified, repulsive, and threatening emails to senior staff, sent a sickening package of feces to his former employer and, most recently, used the United States Postal Service to send threatening letters to two senior staff members. Plaintiff American Association of Community Colleges ("AACC") seeks preliminary and permanent injunctive relief, damages, and any other remedy the Court deems just and proper.

### THE PARTIES

1.     AACC is a non-profit organization incorporated in the District of Columbia with its principal place of business at One Dupont Circle Northwest, Suite 700, Washington, DC 20036.

2.       Defendant Ranzeno Barnes is an individual domiciled in Maryland.

## JURISDICTION AND VENUE

3.       The Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§§ 1331and 1332 because Count I arises under the laws of the United States, and because the

parties are citizens of different states and the damages sought exceed $75,000.  The Court has

supplemental jurisdiction over Count II because it so closely relates to Count I as to constitute

the same case and controversy.

4.       Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1),

because Defendant Ranzeno Barnes resides in Maryland.

## FACTS

Background

5.       AACC is a trade association and the primary advocacy organization for the

country's community colleges.

6.       Mr. Barnes was the Local Area Network ("LAN") Administrator at AACC.  He

was employed at AACC from February 4, 2002 until he was terminated for poor performance

and inappropriate conduct on December 3, 2018.

7.       Throughout his time at AACC, Mr. Barnes consistently received poor

performance reviews.  His supervisors regarded him as competent at some aspects of his job but

incompetent at several other important aspects and ultimately felt he did not possess the skills

needed to perform successfully in his position.

8.       On his annual performance reviews, Mr. Barnes was consistently rated as

"partially effective" or labeled as meeting "some, not all expectations."  In an annual review in

December 2006, a reviewer wrote of Mr. Barnes: "Time management and initiative are STILL

big concerns."  Seven years later, Mr. Barnes had not demonstrated much improvement.  In a

2013 annual review, a reviewer wrote that Mr. Barnes "still lags behind in 'taking the next step'

and providing a value add component to the position."

9.      Mr. Barnes' personal conduct also was problematic and inappropriate in the

workplace.  On frequent occasions, when another employee would try to assist Mr. Barnes in

performing a task, he would become angry and defensive.  Mr. Barnes frequently lashed out at

his colleagues or others at his workplace, including senior staff members, in an angry,

confrontational manner.

10.     On one occasion in January 2016, Mr. Barnes engaged in a confrontation with the

armed security guard who works at the bank next door to AACC's office.  Mr. Barnes created

such a confrontational scene that Ramsay Johnson, AACC's Senior Vice President and Chief

Operations and Financial Officer, was notified of the situation and called Mr. Barnes into his

office to discuss what had happened.

11.     On another occasion in July 2018, Mr. Barnes became agitated when two senior

staff members and one other employee tried to assist him in programming the television monitor

in the office reception area.  Mr. Barnes appeared unable to address the technical problem and

became abusive to the senior staff members when they tried to help.

12.     In November 2018, Mr. Barnes threatened an employee who worked for a third-

party vendor, Design Data.  AACC had engaged Design Data to fill the role of Chief Technology

Officer when Mr. Barnes' boss left AACC.  AACC did not promote Mr. Barnes to that position

because it did not believe Mr. Barnes had the necessary skill or temperament.  Mr. Barnes was

very unhappy with that decision.  While on a telephone call with one of the Design Data

employees with whom Mr. Barnes was required to work, Mr. Barnes threatened that employee,

telling him that if the employee undermined Mr. Barnes, he would regret it.  Mr. Barnes also told

that employee that he had "dirt" on the employee that could get the employee fired.

13.     This incident was the final straw for AACC.  Shortly after AACC learned about

Mr. Barnes' threat to the Design Data employee, AACC terminated Mr. Barnes.

14.     Upon his termination, Mr. Barnes wanted to retrieve items from his office. When

he was told that he could not take items that potentially belonged to AACC, he became agitated

and erratic.  Mr. Johnson informed Mr. Barnes that his personal items would be sent to him and

asked him to leave the building.

15.     Mr. Johnson escorted Mr. Barnes out of the office, with Mr. Barnes cursing as he

left and got on the elevator.

16.     At the time he was terminated and before he left the building, AACC presented

Mr. Barnes with a Separation Agreement (the "Agreement"), which he signed on December 6,

2018.  *See* Exhibit A (Separation Agreement with Ranzeno Barnes).

17.     Under Section 8 of the Agreement, "Proprietary Information and Post-

Termination Obligations," Mr. Barnes is obligated to "refrain from any unauthorized use or

disclosure of AACC's proprietary or confidential information or materials."

18.     Section 15 of the Agreement, "Breach," provides recourse for AACC if Mr.

Barnes violates Section 7, 8, 9 or 10.  If any of these sections are violated, Mr. Barnes must

forfeit all amounts paid and owed to him under the Agreement.  Furthermore, Section 15 requires

that any breach of the Agreement be considered a material breach, and that in addition to any and

all other damages and remedies available to AACC, AACC is entitled to an injunction to prevent

further violation or breach of the Agreement.

19.     Under the terms of the Agreement, AACC agreed to pay Mr. Barnes (a) severance benefits equivalent to four weeks of his base salary, totaling $6,421.58, and (b) $1,941.93, representing 45.59 hours of excess accrued vacation that otherwise would have been forfeited.

Improperly Accessing AACC Computer

20.     On February 5, 2019, after his termination, Mr. Barnes without permission or authority logged on to senior employee Martha Parham's email account using her email password, which Mr. Barnes knew solely as a result of his prior position at AACC as LAN Administrator, and sent an email *that falsely appeared to come from that employee* to the entire staff at AACC.  Mr. Barnes attempted to blind copy the Chair of AACC's Board of Directors, but the email address he used was incorrect.

21.     The email, with subject line "AACC Staff update" and titled "State of AACC," taunted AACC staff by suggesting it was easy to hack their system (e.g., asking, "who's managing your network it was really easy to access"), and proceeded to harass and threaten AACC with menacing language, personal insults, crude language and accusations of misconduct directed at individual officers and AACC as a whole.

22.     Mr. Barnes singled out three AACC senior staff members in the email, referring to them by their initials: AR for Dr. Angel Royal, Chief of Staff to the CEO; RJ for Ramsay Johnson, CFO; and WB for President and CEO Walter Bumphus.

23.     In the email, among other things, Mr. Barnes wrote that "AR contaminate[d] AACC since her arrival" and that the "puppet RJ [was] drinking the kool aid on a daily basis." Other accusations included:

    a.     Dr. Royal has made it her "mission to ruin as many lives as she can" and that she "is unjustly praised for everything she does."

5

     b.     Mr. Johnson is "crocked [sic] as a three dollar bill" and "has Zero management skills."

     c.     Dr. Bumphus is an "overpaid ceo."

     d.     AACC has been wasting "money on the senseless team building sessions that are totally ineffective and yield zero results."

     e.     Dr. Bumphus, Dr. Royal, and Mr. Johnson are "Milking the association."

     f.     "The Association is being scammed."

     g.     "The board needs to realize these bastards are the problem."

     h.     "A GOOD independent AUDIT WILL EXPSOSE [sic] THE CORRUPTION."

     i.     "Enough is enough. Expose them its time," and stated a "Mission: to expose the crooked operation."

24.     The email also included Dr. Royal's, Mr. Johnson's, and Dr. Bumphus' personal salaries followed by the statement: "What a scam they increase each year you stay the same." It added later in the email, "Stay tuned you grossly overpaid heart less MFERS… You're out of control and I'm in control now. Look up I am the fly on the wall (LMAO) as heads bobble up and down while reading this. Trivia Bonus: TFWTWO."

25.     In the minutes after the all-staff email was sent, Mr. Barnes sent individual emails from Dr. Parham's email address to Dr. Royal, Mr. Johnson and Dr. Bumphus, using Dr. Parham's password without permission or authorization, again falsely and improperly making it appear the email was from Dr. Parham, stating the following, among other things.

     a.     The email to Dr. Royal stated, "you better hope i never run across your ass in public I will spite [sic] in your yellow ass face."

     b.     The email to Mr. Johnson stated, "Hey, Bitch its show time. Control has shifted."

    c.      The email to Dr. Bumphus stated, "stay tuned i will be exposing you to the board soon. dont chock [sic] on lunch".

26.      In the days after the email incidents, Dr. Royal was distracted from performing her regular duties.  She was embarrassed and felt threatened by Mr. Barnes' messages.

27.      On February 22, 2019, Dr. Royal, received a package at the AACC office that held a container of animal feces.  On information and belief, Mr. Barnes sent that package.

28.      This incident caused Dr. Royal additional emotional distress and further interfered with her ability to perform her job.

<u>AACC Response to Email and Package Incidents</u>

29.      Immediately after the email incidents in early February 2019, AACC engaged Cooley, LLP ("Cooley"), a law firm that specializes in privacy and computer breaches, among other things, and forensic firm The Crypsis Group ("Crypsis"), which also specializes in data and computer breaches, to investigate.

30.      AACC believed that the emails were likely sent by Mr. Barnes due to his familiar writing style and inclusion of information that only he knew.  Crypsis determined that at least some of emails sent without authorization using Dr. Parham's email account had been sent from an establishment proximate to Mr. Barnes' residence in Maryland.

31.      AACC believes Mr. Barnes accessed the company's email account by improperly using Dr. Parham's password, but that was not immediately known based on the surreptitious and illegal manner in which Mr. Barnes acted.  Accordingly, AACC originally undertook an investigation taking the precaution that its broader computer system might have been compromised.

32.     As a result of the initial breach of security by Mr. Barnes sending emails using Dr. Parham's account, AACC and its employees took several steps to address the potential threat and to protect and improve office security, including the following:

a.     AACC contacted the Metropolitan Police Department ("MPD") to initiate an investigation.

b.     AACC held an organization-wide meeting about the emails and also held numerous meetings among senior staff to discuss how to handle the situation.

c.     AACC changed Dr. Parham's email password to prevent further access to her account.

d.     AACC locked down the floor of the building on which its office is located. Employees must now use their badges in the elevator to access AACC's floor.

e.     AACC provided the lobby front desk with a picture of Mr. Barnes so that security could alert AACC if Mr. Barnes tried to enter the building.

f.     Mr. Johnson changed his work schedule to match the early hours that Dr. Royal worked so she would not be alone in the office early in the morning.

33.     AACC incurred charges well in excess of $75,000 in professional fees, including fees for the forensic analysis performed by Crypsis, as a direct result of and in response to this incident.

<u>Letters Sent to Mr. Johnson and Dr. Bumphus</u>

34.     In the months following the initial emails, no further communications were received from Mr. Barnes.  AACC believed and hoped that the initial illegal actions and communications could be attributed to Mr. Barnes' initial anger at his termination.  They hoped that this anger and desire to target AACC would dissipate.

35.     During this period of inactivity, Mr. Barnes was receiving unemployment payments.  But these payments ended approximately a year later, around January 2020.

36.     In January 2020, Mr. Johnson and Dr. Bumphus each received a letter sent through the United States Postal Service to their homes, each titled "Friendly Reminder 12/19."

37.     The content of each letter was very similar to the content of the all-staff email that Mr. Barnes had sent illegally and without authorization from Dr. Parham's email account in February 2019.

38.     The letter sent to Dr. Bumphus also included a new paragraph at the end referencing the fact that a MPD sergeant had visited Mr. Barnes' home after he sent the original emails in February 2019, which stated:

> "Just a reminder that nothing has changed your still a Bitch as have been reported back. You're a team of worthless mother fuckers and im not done with your asses stay tuned. For the record as long as your at aacc I will continue to terrorize your ASSES. YFWTWO. Figured it out yet. Tell the sargent that mother fucker. [sic]"

39.      The letter sent to Mr. Johnson also included this new paragraph as well as one additional paragraph containing personal insults.

40.     On information and belief, based on the many similarities and content that only Mr. Barnes knew, Mr. Barnes sent the letters to Mr. Johnson and Dr. Bumphus.

41.     Following receipt of the letters by Mr. Johnson and Dr. Bumphus, AACC made another report with the MPD.

### COUNT I: COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

42.     Paragraphs 1 through 41 are incorporated by reference.

43.     Mr. Barnes intentionally accessed an AACC company email address when he logged into Dr. Parham's account.

44.     The AACC company email account is a protected computer as defined in 18 U.S.C. § 1030(e)(2).

45.     Mr. Barnes' access to the AACC company computer was unauthorized, because Mr. Barnes was no longer an AACC employee at the time he accessed the account and he had no special authorization or any other permission or authority to access or use a company computer after his termination.

46.     As a result of Mr. Barnes' unauthorized access of an AACC company computer, AACC suffered damages and loss, including the cost of responding to the incident, in an amount well in excess of $75,000.

**COUNT II: TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE**

47.     Paragraphs 1 through 41 are incorporated by reference.

48.     Mr. Barnes intentionally and willfully logged into Dr. Parham's AACC email account and sent crude and offensive emails to all staff at AACC and additional threatening emails to individual senior staff.

49.     Mr. Barnes intentionally and willfully typed, printed, and mailed letters containing crude, offensive and threatening language to Dr. Bumphus and Mr. Johnson at their home addresses.

50.     These emails and letters were calculated and intended to interfere in the ongoing business relationship between AACC and members of its senior staff.

51.     The emails and letters were intended to threaten, harass, and embarrass Dr. Royal, Mr. Johnson, and Dr. Bumphus, and sow divide between them and AACC as a whole.

52.     By attempting to copy the AACC Board Chair on the all-staff email, Mr. Barnes intended to endanger the jobs of the three senior staff members, disrupt the company and throw the integrity of the organization and its senior staff into question.

53.     The threatening language in the all-staff email, the individual emails, and the mailed letters were intended to make Dr. Royal, Mr. Johnson, and Dr. Bumphus feel harassed and unsafe, therefore interfering with their productivity at work and diverting their time and attention from their regular duties to responding to these incidents.

54.     Mr. Barnes' conduct was accompanied by actual malice because he acted out of ill will towards AACC and its senior staff.

55.     In addition to the previous allegations, Mr. Barnes' conduct was independently wrongful and unlawful because it violates, among other state and federal criminal statutes, 18 U.S.C. §§ 1030 (Computer Fraud and Abuse Act), 875 (Interstate Communications), and 876 (Mailing Threatening Communications) and Maryland Code, Criminal Law, 3-803 (Harassment), 3-805 (Misuse of Electronic Communication), and 7-302 (Unauthorized Access to Computers and Related Material), and constitutes other tortious conduct.

56.     AACC incurred actual damage and loss as a result of Mr. Barnes' actions.

## COUNT III: BREACH OF CONTRACT

57.     Paragraphs 1 through 41 are incorporated by reference.

58.     AACC's Separation Agreement with Mr. Barnes constitutes a contractual obligation requiring Mr. Barnes to refrain from the unauthorized use of AACC's proprietary and confidential information and materials.

59.     AACC fully and faithfully performed all of its obligations under the Agreement, providing Mr. Barnes with specific and quantifiable monetary benefits.

60.     Mr. Barnes materially breached his contractual obligations under the Agreement when he improperly, illegally and without permission or authorization used AACC credentials to access an AACC email account and to use confidential AACC information.

61.     As a legal consequence of his material breach, Mr. Barnes is liable under the Agreement to return in full all the benefits he received under the Agreement, including all the monetary benefits he received.

**WHEREFORE**, Plaintiff American Association of Community Colleges respectfully requests that this Court:

(1) Enter judgment in its favor and against Mr. Barnes on all counts;

(2) Preliminarily and permanently enjoin Mr. Barnes;

     a.   from accessing AACC's computers, including any of its email servers or accounts or any other computers as defined in the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

     b.   from contacting by phone or otherwise, including sending any emails, texts, social media communications, United States mail or any other communications of any type, AACC or to any of its employees, for any reason, except through counsel, until further order of this Court; and

     c.   From approaching within 300 yards of the AACC building at One Dupont Circle Northwest, Suite 700, Washington, DC 20036, or of the person or of the personal residences of Angel Royal, Ramsay Johnson, or Walter Bumphus;

(3) Award damages to AACC in an amount to be proven at trial;

(4) Award reasonable attorney's fees and costs; and

(5) Grant such other relief as the interest of justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff American Association of Community Colleges hereby demands a trial by jury on all issues triable by jury pursuant to Fed. R. Civ. P. Rule 38.

Dated:  March 5, 2020

Respectfully submitted,

/s/ David Mills
David E. Mills
Bar No. 16654

Alexandra Eber
Allegra Flamm
*Motions for admission pro hac vice to be filed*

COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
(202) 776-2865
dmills@cooley.com

*Attorneys for Plaintiff*

## VERIFICATION

We solemnly affirm under the penalties of perjury that the contents of the foregoing

paper are true to the best of my knowledge, information, and belief.

3-4-2020
_____
Date

3/4/2020
_____
Date

_____
Dr. Walter G. Bumphus
*President and CEO*
*(as to facts relating to him)*

_____
Ramsay R. Johnson, Jr., CPA, CGMA
*In his capacity as*
*Senior Vice President and Chief*
*Operations and Financial Officer*